ESTATE OF ROSE M. NOVETZKE, DECEASED, MARYANN CRAWFORD, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Novetzke v. Commissioner
Docket No. 5519-86.
United States Tax Court
T.C. Memo 1988-268; 1988 Tax Ct. Memo LEXIS 299; 55 T.C.M. (CCH) 1116; T.C.M. (RIA) 88268; June 22, 1988. R.E.T. Smith, for the petitioner. John C. Schmittdiel, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: *300 The Commissioner determined a deficiency in estate tax in the amount of $ 12,641.02 in respect of the estate of Rose M. Novetzke. After concessions, the sole issue remaining in dispute is whether decedent's husband, Leo J. Novetzke, effectively transferred bonds to a family partnership before his death. If the bonds were not so transferred, it is agreed that they were includable in decedent's husband's estate, and, through his will, half are includable in decedent's estate. The case was submitted on the basis of a stipulation of facts and attached exhibits. Petitioner is the Estate of Rose M. Novetzke. The decedent died on November 1, 1982, a resident of North Dakota. Her husband, Leo J. Novetzke, died on March 13, 1982. On or about September 1, 1981, Leo J. Novetzke purchased $ 150,000 of Malme Supply Project, Municipal Industrial Development Revenue Bonds issued by the County of Richland, North Dakota. The bonds (sometimes referred to as "Malme bonds") were issued in order to finance the "acquisition, construction, improving and equipping of certain real property, buildings and improvements used or useful in connection with a facility used in the retail sale and service *301 of computer equipment and supplies * * * to be leased under a lease to Jubert Malme d/b/a Malme Supply". Each bond contains the following provisions: THE BOND * * * IS A LIMITED OBLIGATION OF ISSUER PAYABLE SOLELY FROM THE REVENUES TO BE DERIVED BY ISSUER PURSUANT TO THE LEASE AGREEMENT * * *. THE BOND AND INTEREST PAYABLE THEREON SHALL NEVER CONSTITUTE A DEBT OF ISSUER, THE STATE OF NORTH DAKOTA OR ANY POLITICAL SUBDIVISION THEREOF * * * AND SHALL NOT CONSTITUTE NOR GIVE RISE TO A PECUNIARY LIABILITY OF, OR A CHARGE AGAINST THE GENERAL CREDIT OR TAXING POWERS OF, ISSUER, THE STATE OF NORTH DAKOTA OR ANY POLITICAL SUBDIVISION THEREOF. [Emphasis in original.]
That provision is in accord with the Indenture of Trust and Mortgage which states that "The Bonds shall not be a general obligation of Issuer but shall be a limited obligation payable solely from the rents and other amounts derived from the leasing of the Project". Decedent's husband owned ten such Malme bonds (designated R-1 through R-10) of varying face amounts, with an aggregate principal amount of $ 150,000. Interest on the bonds was earned purportedly "at the rate of twelve percent (12%) per annum" and was *302 "payable semiannually". The bonds were to mature with the principal and interest payable on the following schedule: Bond
Date
Principal
Interest
R-1
9/1/82
$   2,000
$  18,000
R-2
9/1/83
2,000
17,760
R-3
9/1/84
3,000
17,520
R-4
9/1/85
3,000
17,160
R-5
9/1/86
3,000
16,800
R-6
9/1/87
4,000
16,440
R-7
9/1/88
4,000
15,960
R-8
9/1/89
5,000
15,480
R-9
9/1/90
5,000
14,880
R-10
9/1/91
119,000
14,280
$ 150,000
$ 164,280
Each bond provides that the issuer promises to pay its face value with interest to "Leo J. Novetzke, Wahpeton, North Dakota, or registered assigns". Each bond further provides: This Bond is transferable by the registered holder hereof in person or by a duly authorized attorney in writing at the principal office of Trustee in Bismarck, North Dakota, but only in the manner, subject to the limitations and upon payment of the charges provided in the Indenture, and upon surrender and cancellation of this Bond. Upon such transfer, a new registered Bond of the same maturity and for the same aggregate principal amount will be issued to the transferee in exchange therefor. [Emphasis *303 in original.] Attached to each bond was a form, blank when the bonds were issued, entitled "Transfer" which is reproduced as follows: TRANSFER FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto    the within Bond and all rights thereunder, and hereby irrevocably constitutes and appoints    attorney to transfer the within Bond on the book kept for registration thereof, with full power of substitution in the premises.
Dated    ,    .   It is stipulated that on March 10, 1982, Leo J. Novetzke was still the owner of these bonds. On March 11, 1982, decedent's husband, accompanied by his daughter Maryann Crawford, entered his safety deposit box. He removed several items from the safety deposit box, including the ten Malme bonds and a $ 50,000 Temporary Warrant of 1981 Library Repair Fund (a bearer obligation issued by the City of Wahpeton, Richland County, North Dakota). He physically handed the bonds and the warrant to his daughter and indicated his desire to make a gift thereof to an entity called the Novetzke Family Fund (the Fund), a family partnership composed of the five children of Leo J. and Rose M. Novetzke, of which Maryann *304 Crawford was then the general partner. Although the stipulated materials do not explicitly so state, the fair inference therefrom is that Maryann Crawford accepted the gift on behalf of the Fund, and we so find as a fact. Immediately after he handed these items to her, they went to the offices of the law firm of Smith and Strege. After decedent's husband communicated his intent to attorney Strege, the bonds and the warrant were left with Strege. The forms attached to the bonds and entitled "TRANSFER" were not completed by decedents's husband when he handed them to his daughter or when they were left with Strege. However, on March 30, 1982, after Leo J. Novetzke's death, they were executed on behalf of the "ESTATE OF LEO J. Novetzke, DECEASED" by Maryann Crawford, William Novetzke, and Robert F. Crawford, as Personal Representatives of his estate. The form thus signed by his representatives after his death named "THE NOVETZKE FAMILY FUND" as the transferee. In his will, decedent's husband directed that "one-half (1/2) of the value of my adjusted gross estate * * * less * * * the value of all interests and property, if any, which pass or have passed to my wife under other provisions *305 of this Will or otherwise than under this Will" be set aside. That portion set aside was given, devised and bequeathed to "Trustee * * * to hold, manage, invest and reinvest the same, to collect the income and to pay over the net income * * * to or for the benefit of my beloved wife, Rose M. Novetzke, during her life, and upon her death to transfer, convey and pay over the balance in said Trust contained, principal and interest, to or for the benefit of such person or persons, or the estate of my wife, in such amounts or proportions and in such lawful interest or estates as my wife shall by her Last Will and Testament appoint. The Commissioner, in his notice of deficiency, increased the taxable estate by $ 80,681.34 to take into account decedent's ownership of "cash and bonds inherited from the estate of Leo J. Novetzke." Although petitioner has conceded $ 5,681.34 of that adjustment, the remaining $ 75,000 is still in issue. That $ 75,000 represents decedent's one-half share (through her husband's will) of the Malme bonds, and there is no dispute between the parties that the Commissioner correctly included that one-half share in her gross estate if her husband had failed to *306 make an "effective transfer" of the bonds to the Trust prior to his death. The Commissioner also determined "that adjusted taxable gifts should be -0- instead of the $ 50,000 shown on the estate tax return". This adjustment similarly stems from exclusion of the bonds from decedent's husband's estate. Accordingly, the ultimate issue before us is whether decedent's husband did in fact make a legally effective inter vivos transfer of the Malme bonds to the Novetzke Family Fund thereby foreclosing the inclusion of any portion thereof in the decedent's gross estate. [1] The Commissioner did not make any adjustment as to the $ 50,000 bearer warrant handed to Maryann Crawford for the Fund, apparently on the assumption that the decedent's husband had made an effective gift thereof to the Fund prior to his death. The parties' respective arguments for inclusion or exclusion of the bonds center on the applicability *307 of various provisions of the North Dakota Century Code (the North Dakota Code or the Code) to the facts set forth above. The Government's position rests upon the fact that the bonds were not endorsed when they were delivered by decedent's husband to Maryann Crawford as representative of the Fund. Petitioner on the other hand argues that endorsements were not required nor did the transfer have to be registered in order to make the transfer effective to remove them from the decedent's husband's estate. Like ships passing in the night, each party bases its position on entirely different provisions contained in different titles and chapters of the North Dakota Code. We have carefully threaded our way through these provisions, and are satisfied that petitioner's position is correct and that the provisions relied upon by the Government are inapplicable here. We now proceed to set forth our analysis of the North Dakota Code provisions as they relate to this case. The statutory materials relied upon by petitioner are found in Title 41 of the North Dakota Code, which adopted the Uniform Commercial Code, and in particular in Chapter 41-08 of that title, which is concerned with investment *308 securities. At the time the transfer here in issue was made, [2] section 41-08-02.1.a. defined a "security" as an instrument which: (1) Is issued in bearer or registered form. (2) Is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment. (3) Is either one of a class or series or by its terms is divisible into a class or series of instruments. (4) Evidences a share, participation, or other interest in property or in an enterprise or evidences an obligation of the issuer. Section 41-08-02.1.c. described a security as being in "'registered form' when it specifies a person entitled to the security or to the rights it evidences and when its transfer may be registered upon books maintained for that purpose by or on behalf of an issuer * * *". Although neither party discusses the point, it would appear that the bonds before us quite *309 clearly fall within the definition of a "security" in "registered form" covered by chapter 41-08. As to the transferability of investment securities, section 41-08-17.1. provides: "Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey * * *".
For purposes of the entire Title 41, a "purchaser" is defined as one "who takes by purchase" (section 41-01-11.33), and "purchase" is defined to include "gift" (section 41-01-11.32). Delivery to a purchaser occurs when the purchaser "or a person designated by him acquires possession of a security". Section 41-08-29.1.a. Moreover, if the security is registered and delivered without the necessary endorsement, the following critical provision in section 41-08-23 is applicable: Effect of delivery without endorsement -- Right to compel endorsement. Where a security in registered form has been delivered to a purchaser without a necessary endorsement he may become a bona fide purchaser only as of the time the endorsement is supplied, but against the transferor the transfer is complete upon delivery and the purchaser has a specifically enforceable right *310 to have any necessary endorsement supplied. [Emphasis supplied.] Although the North Dakota courts apparently have not had the opportunity to apply the pertinent provisions of the North Dakota Uniform Commercial Code (Title 41) to facts such as those before us, courts of other states have done so in respect of like provisions adopted by such states. The Supreme Court of Minnesota has said that "All that is required to effectuate a value transfer of securities between the parties to the transfer is delivery with the intent to change ownership". . Specifically in connection with the Minnesota version of North Dakota's section 41-08-23, the court noted that "Lack of an endorsement does not affect the validity of the transfer as between the transferor and the transferee". . This view of the effect of the section has support in the decisions of other state courts. See ; ; *311 ; . Moreover, contrary to the Government's contention based on the absence of endorsements, the effect of section 41-08-23 is not inconsistent with North Dakota law governing the validity of a gift. Under section 47-11-06, "A gift is a transfer of personal property made voluntarily and without consideration". Further, under section 47-11-07, an oral gift can be valid if "the means of obtaining possession and control of the thing are given" and "there is an actual or symbolical delivery of the thing". The North Dakota Supreme Court has set forth the following as the elements of a gift ( , citing : To constitute a valid gift inter vivos there must be an intention on the part of the donor to then and there transfer title to the property to the donee, coupled with an actual and constructive delivery of the property of a nature sufficient to divest the owner of *312 all dominion over the property and to invest the donee therewith.
Leo J. Novetzke's donative intent has been stipulated to here, as has been the physical transfer of the bonds to his daughter Maryann Crawford is representative of the donee Fund. [3] The only remaining question is whether he gave the donee "means of obtaining possession and control of the" bonds under section 47-11-07. (Emphasis supplied.) The answer is provided by section 41-08-23 which states that, upon delivery of a security which is in registered form but without endorsement, "the purchaser has a specifically enforceable right to have any necessary endorsement supplied". Since Maryann Crawford received both delivery of the bonds and the means of obtaining control of them, as between Leo J. Novetzke and Maryann Crawford (as agent for the Fund), the gift of the bonds involved here was complete at the time of their delivery to her. He had no remaining interest whatever in the bonds. *313 It is important to bear in mind that the crucial question before us in this Federal estate tax case is whether decedent's husband made an effective transfer of the Malme bonds under North Dakota law on March 11, 1982, so as to remove them from his estate at that time. The answer does not depend upon whether, under North Dakota law, the transferee's rights had been fully matured by obtaining the endorsements (which it had a right to compel) and by having the transfer registered (which it similarly had a right to command). The words "effective transfer" are susceptible of two meanings, only one of which is pertinent in the contest of this case. On the one hand, that term could mean that Leo J. Novetzke effectively parted with all his interest in the bonds, so that no rights whatever remained with him that could thereafter be treated as included in his estate. On the other hand, it could refer to a transfer where, in addition, the donee's rights became fully mature only after endorsement and registration of the transfer. This latter meaning is significant in respect of the rights of the donee as against the issuer and the extent to which the donee could thereafter make a further *314 transfer of the bonds to another transferee. This second meaning of the words "effective transfer" is wholly irrelevant in respect of the issue before us, namely, whether decedent's husband effectively transferred, i.e. parted with, all his rights when he delivered possession of the bonds with the intent to make a gift thereof to the donee notwithstanding the absence of endorsement at that time and failure to have the transfer registered. The pivotal consideration here is that decedent's husband's transfer effectively left him with no residual rights in the Malme bonds that could possibly have been part of his estate at his death, with the consequence that his widow acquired no rights in such bonds from his estate any portion of which might be included in her estate at her death. If section 41-08-23 of the North Dakota Code is applicable, as we hold that it is, then there was an "effective" inter vivos transfer by Leo J. Novetzke, and the Malme bonds were no more part of his estate than was the bearer warrant which the Commissioner has not undertaken to include to any extent in the widow's gross estate. We think that the Malme bonds require the same treatment in this case as the bearer *315 warrant. Indeed, the Government has conceded that "but for the specific provisions" in wholly different titles of the North Dakota Code on which it relies, "it would appear that [section 41-08-23 in Title 41 on which petitioner relies] supports petitioner's argument". [4] Enough said. We now consider the "specific provisions" of certain other titles of the North Dakota Code that are urged upon us by the Government. The first two of such "specific provisions" are found in sections 5-11-08 and 54-11-09. These sections are in Title 54, which is captioned "STATE GOVERNMENT," and in particular in chapter 54-11 of that title captioned "STATE TREASURER". That chapter is concerned with the state treasurer, his duties, his office, and like matters. Section 54-11-08 imposes on the state treasurer the duty of registering bonds "issued or assumed by the state of North Dakota", and then goes on to state that no *316 transfer shall be deemed valid "unless registration of the transfer shall be deemed valid "unless registration of the transfer is made by the state treasurer as aforesaid". The Malme bonds in controversy were "issued" by Richland County, not by the state of North Dakota, nor were they "assumed" by the state. Obviously, section 54-11-08 has no bearing whatever upon the Malme bonds. Similarly inapplicable here is section 54-11-09, which provides that "registration of bonds by the state treasurer shall vest the ownership thereof * * * in the person in whose name the last registration is made". The state treasurer performs no function whatever in respect of the registration of the Malme bonds, which we again point out were not state bonds. Sections 54-11-08 and 54-11-09 simply do not govern the transfer of the Malme bonds, which were issued by Richland County. The last North Dakota Code section relied upon by the Government is section 21-03-35. It does indeed restrict the transfer of registered "municipal" bonds, by providing that "After registration of a municipal bond as provided in section 21-03-34, [5] no transfer thereof shall be valid unless made on the records of the county *317 auditor * * *". However, that section is inapplicable here because section 21-03-02 in the same chapter 21-03 states that: This chapter is not applicable: 1. To issue of bonds, warrants, or other forms of public securities issued on account of public improvements and for the payment of which special assessments are or shall be levied upon and against property benefited thereby which do not constitute, at the time of their issuance, a general obligation or fixed liability of the municipality issuing the same * * *. [Emphasis supplied.] Although section 21-03-02 could be read narrowly to refer only to bonds payable out of special assessments or from specified property, the Supreme Court of North Dakota has given it broader scope in . *318 The court there held that municipal revenue bonds, payable from the net earnings of an electric plant did not constitute a general obligation of the municipality and were therefore not covered by certain restrictions by reason of the court's reading of substantially identical predecessor provisions of section 21-03-02. The court said (): The chapter plainly indicates that it applies to general obligation bonds only. It does not pertain to those obligations payable by special assessments, nor could it apply to an indebtedness that is made payable out of a special fund, such as is involved in the instant case. [Emphasis supplied.] Thus, although section 21-03-35 does restrict transferability of municipal bonds, it does not apply to bonds that are not general obligation bonds. The Malme bonds before us are not general obligations of Richland County. They are explicitly stated to be a "limited obligation" of the issuer and "shall not constitute nor give rise to a pecuniary liability of * * * issuer, the State of North Dakota or any political subdivision thereof". In sum, we hold that the North Dakota Code provisions relief upon by the Government *319 are inapplicable and that the provisions in that code relied upon by petitioner govern here. The Malme bonds had been effectively disposed of by decedent's husband prior to his death. They were not part of his estate, and were therefore not inherited by decedent from him. They are not includable in her estate. Decision will be entered under Rule 155.
Footnotes
1. As a result of the related $ 50,000 gift adjustment in respect of certain unidentified inter vivos gifts made by the decedent, only $ 25,000 appears to be in dispute here by reason of the Commissioner's inclusion of $ 75,000 of the Malme bonds in decedent's gross estate. ↩
2. References to or quotations from various sections of the Code relate to the provisions as they were in effect when the pertinent events occurred. We note that changes, some of them extensive, have since been made in these provisions.↩
3. Nonetheless, the Government argues that "the fact that the bonds were left in possession of Leo Novetzke's agent [attorney Strege] itself raises a question as to whether or not the delivery was complete". We do not view the fact that the bonds were turned over to Strege as negating their original physical delivery to Maryann Crawford. The Government additionally argues, in its reply brief, that the fact that the bonds were left with Leo Novetzke's attorney raises "a distinct question regarding Leo's intention to make a present gift". This question is resolved by our reading of the parties' stipulation that "Leo J. Novetzke physically handed the bonds * * * to Maryann Crawford and indicated he desired to gift those items to the * * * Fund". ↩
4. The Government does not contend that the terms of the bonds themselves impose any greater operative impediment to the effective transfer of the bonds by decedent's husband than are found in the North Dakota Code. Accordingly, we do not pass upon any such possible point. ↩
5. Section 21-03-34 is concerned with registration of bonds "issued by any municipality". The term "municipal bond" as used in section 21-03-35 thus refers to bonds issued only by a political subdivision of the state, in contrast to the broader common usage of the term "municipal bonds", particularly in financial circles, to refer to bonds issued either by a state or any of its political subdivisions or↩ both.